IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JEFFREY GLEN STOKES,

    Plaintiff,
v.                                                                         CASE NO. 1:05-cv-00080-MP-MD

DR. DOLWICK,
DR. GERLECZ,
DR. SHIELDS,
DR WINKE,

    Defendants.

_____/

**O R D E R**

This matter is before the Court on Doc. 69, Report and Recommendation of the Magistrate Judge, recommending that summary judgment be granted in favor of the defendants. The plaintiff filed objections, doc. 70, which the Court has reviewed. For the reasons which follow, summary judgment is granted.

After Plaintiff began experiencing jaw pain, he was treated by various dentists and oral surgeons, including the defendants. Plaintiff alleges that as of September 3, 2003, Dr. Shields knew from reviewing plaintiff's dental file in order to respond to a grievance he had filed, that plaintiff continued to experience pain, was unable to fully open his jaw or chew and grind solid foods, but refused to order any corrective treatment. As of April 21, 2005, when Dr. Shields was again required to review plaintiff's file, he knew that plaintiff was still in pain from his TMD and the metal shavings in his jaw, but refused to order any corrective treatment or inform Dr. Gerlecz of the need for a consultation for corrective surgery. As of June 17, 2005 when Dr. Shields reviewed plaintiff's dental file for a third time, he knew that Dr. Gerlecz had filed no requests for

corrective surgery. (Compl. Statement of facts ¶¶ 21-23; statement of claim ¶¶ 1-16)). Plaintiff maintains that Dr. Gerlecz never requested any corrective surgery for him, despite the knowledge as plaintiff's primary dental care provider that it would have been his responsibility to submit a consult form for treatment that was beyond his capacity to perform, and knowing that the metal shavings in plaintiff's jaw were preventing it from fully opening, and were causing plaintiff pain and inability to chew his food. (Compl. Statement of facts ¶¶ 24-26, statement of claim ¶¶ 17-31).  Finally, plaintiff alleges that Dr. Allis failed to notify and request of DOC officials that corrective surgery be performed on plaintiff because plaintiff was in pain from the previous surgery. (Compl. Statement of claim ¶¶ 32-41). Plaintiff seeks declaratory relief that a corrective procedure existed since 2000, injunctive relief that a corrective procedure be performed, and monetary damages for his years of pain and suffering in an amount dependent upon the success of the procedure.

The record in this case, however, simply does not support plaintiff's allegations.  As an initial matter, no doctor ever stated that metal shavings were present in plaintiff's jaw.  In fact, various x-rays specifically conducted to find foreign bodies in plaintiff's jaw found none, and no expert in this case opined that foreign bodies were present or the cause of plaintiff's problems.  Dr. Franco simply noted that sometimes metal shavings could cause the type of sensitivity artifacts seen in this case.  He eventually concluded that no metal shavings were present.

Moreover, the Court agrees with the Magistrate Judge that the "record before this court establishes that this is the quintessential example of a dispute over the adequacy of the medical attention received."  As the Magistrate Judge put it,

> Plaintiff's medical records display a longitudinal picture of the defendants and

> others attempting to alleviate the plaintiff's complaints with respect to his TMD. He was seen by both general practitioners and at least eight different specialists. (Defendants' Exhibit B2- Dr. Allis, B7-Dr. Shaik, B11-Dr. Winton, B12-Dr. Wagoner, B17-B22-Dr. Dolwick, B42- Dr. Wenk, B60-Dr. Tabeling, B63-B64-Dr. Skigen). MRI's and xrays were taken and two different medical procedures, an arthrocenteses and arthroplasty were performed on plaintiff relevant to his complaints of TMJ pain. (Defendants' Exhibit B12-B13, B17-B22). He was provided special diets and both OTC and prescription pain relievers. (See generally Defendants' Exhibit B-B68). He was referred to Physical Therapy (Defendants' Exhibit B35) and the Pain Clinic (Defendants' Exhibit B50-B57) for his complaints. He was informed by an oral specialist that the TMJ arthroplasty procedure might not provide an improvement. (Defendants' Exhibit B16- Page 18 of 19 Case No: 1:05cv80/MMP/MD B22). He was informed after surgery that his symptoms might continue. (Defendants' Exhibit B24-B26). Further, surgery was not recommended by several oral specialists. (Defendants' Exhibit B26, B44, B60). Even still, plaintiff was again referred for another evaluation by an oral specialist in June of 2005, who recommended continued non-surgical treatment. (Defendants' Exhibit B63-B64). Although plaintiff insists that there was an unidentified "$50,000 surgery" that could have alleviated his TMD problems, there is no record evidence that any of the specialists believed there to be a viable surgical alternative to the treatments provided. Even if there was, as noted above, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. See Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. Estelle, 429 U.S. at 107, 97 S.Ct. at 292; Hamm, 774 F.2d at 1575. A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. Campbell, 169 F.3d at 1363. Plaintiff has failed to show deliberate indifference to his serious medical needs that would rise to the level of a constitutional violation.

<u>Report and Recommendation</u>, p. 17-18.  The Court agrees that this is the proper application of the law to the facts in this case, and disagrees with the plaintiff's assertion in his objections, doc. 70, that "the surgical procedure performed left the plaintiff orally impaired on a puree diet for life and metallic shavings in his jaw."  Instead, every bit of evidence in the case supports the conclusion it was plaintiff's unfortunate condition itself which is cause of his impairments, and the surgical procedures performed on him were part of a long-term, well managed history of

medical interventions designed to provide whatever relief was possible.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge is adopted and incorporated herein.

2. Summary judgment is granted on behalf of the defendants, and the clerk is directed to close the file.

**DONE AND ORDERED** this  *2nd*  day of May, 2007

  *s/Maurice M. Paul*  
Maurice M. Paul, Senior District Judge